IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CARMEN I. JELITTO, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | **ORDER** <br><br><br> Case No. 2:11-cv-235 SA <br><br> Magistrate Judge Samuel Alba |

Plaintiff Carmen I. Jelitto has filed suit asking the court to reverse the final agency decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Administrative Law Judge ("ALJ") found that Jelitto is not disabled because she is capable of performing a number of sedentary and light jobs. Jelitto now challenges the ALJ's decision by arguing that it is legally erroneous and not supported by the substantial evidence. Specifically, Jelitto argues that the ALJ improperly failed to assign adequate weight to the opinions of two physicians, Dr. Kelton Lundsberg and Dr. Gerald Manwill.

Having carefully considered the parties' memoranda and the complete record in this matter, the court AFFIRMS the ALJ's decision.

## THE ALJ'S DECISION

Jelitto filed an application for SSI on September 10, 2007, at the age of 44. An administrative hearing, at which Jelitto testified, was held April 1, 2009. Following the hearing,

the ALJ denied Jelitto's claim, finding that she had the residual functional capacity to perform a range of light work, with certain restrictions.

The ALJ followed the five-step sequential evaluation process for evaluating disability claims. First, the ALJ found that Jelitto had not engaged in substantial gainful activity since her SSI application date. Second, the ALJ found two severe impairments: degenerative disc disease of the lumbar spine and a mood disorder. Third, the ALJ determined that Jelitto did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part. 404, Subpart. P, Appendix. 1.

Following this analysis, the ALJ determined that Jelitto had the residual functional capacity to perform a range of light work, so long as she: (1) be able to sit and stand at will; (2) never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and (3) avoid concentrated exposure to cold, vibration, and hazards such as machinery and heights. The ALJ also determined Jelitto had "slight mental limitations (10 percent overall reduction) in her ability to understand, remember, and carry out detailed instructions; maintain extended attention and concentration; and make complex work decisions."

With these findings, the ALJ determined at step four of the analysis that Jelitto could not return to her past relevant work as a delivery driver, bartender, or waitress. The ALJ did find at step five, however, that Jelitto was capable of performing a variety of work which existed in significant numbers in the national economy, including small parts assembler, solderer, and call-out operator.

In light of these findings, the ALJ denied Jelitto's claim on December 15, 2009. Jelitto

appealed this request on January 11, 2010, but her request for review was denied by the Appeals Council the following day. Jelitto then filed suit in this court on March 10, 2011. The issue has been fully briefed, and no oral argument was requested. Parties have consented to jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Dkt. No. 12.

Jelitto argues that the ALJ erred in reviewing her residual functional capacity because the ALJ: (1) did not give controlling weight, or alternatively fair weight, to the opinion of Dr. Lundsberg, Jelitto's primary care physician, and (2) did not include the functional limitations found by Dr. Manwill, who evaluated Jelitto's mental functioning following the administrative hearing.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (internal quotations and citations omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks omitted).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Rather, it is to "examine the record as a whole, including whatever in the record fairly detracts from the weight of the

3

[Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

## ANALYSIS

Generally, an ALJ must give more weight to the opinions of a claimant's treating sources than to the opinions of nontreating sources. *See* 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the "treating source's opinion on . . . the nature and severity" of the health issues "[1] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is not inconsistent with the other substantial evidence in [the] case record," that opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When a treating source's opinion does not meet these two criteria, and for all non-treating source's opinions, weight is determined by the supportability of the opinion, the consistency of the opinion with the record, the specialization of the source, and "other factors," including "the amount of understanding of [the SSI process] an acceptable medical source has" and how familiar the source is with other information in the case record. 20 C.F.R. § 404.1527(c)(3)–(6). For a treating source, the ALJ is also to consider length of treatment, frequency of examination, and the nature and extent of the treatment relationship. *Id.* at (c)(2).

### I.    DR. LUNDSBERG

According to the record, Dr. Lundsberg was Jelitto's primary care physician. He treated her frequently throughout 2007 and 2008, and made regular notes of her complaints concerning her lower back pain.

In addition to his patient notes, Dr. Lunsberg completed two work ability reports, one on

4

February 15, 2008 and the other on June 27, 2008, both indicating that Jelitto could not work. Dr. Lundsberg also completed a Medical Report, on February 9, 2009. In that report, Dr. Lundsberg concluded that Jelitto would need to lie down every few hours for about thirty minutes at a time because of her lower back pain. Administrative Record at 411, Dkt. No. 8 (June 9, 2011) (hereinafter "Record"). At the administrative hearing, the vocational expert testified that with this additional restriction on Jelitto's ability to work, she would not be eligible for competitive employment. *Id.* at 66. Dr. Lundsberg also opined that Jelitto's lower back pain would impact her ability to concentrate in the workplace. *Id.* at 412. The vocational expert indicated at the hearing that this would also affect Jelitto's eligibility for disability benefits. *Id.* at 67. However, the ALJ gave little weight to Dr. Lundsberg's opinion and did not include these restrictions in assessing Jelitto's ability to work.

### A.     Controlling Weight

The ALJ found that Dr. Lundsberg's opinions were not entitled to controlling weight both because his opinions were not well supported by clinical and laboratory techniques, and also because they were not consistent with the other substantial evidence of record. The court will review each of these findings in turn.

In relation to Dr. Lundsberg's opinion on Jelitto's lower back pain, the ALJ found that it was not well supported by clinical and laboratory techniques because of the "striking" infrequency of back examinations conducted by the doctor. *Id.* at 28. According to the ALJ,

> Dr. Lundsberg's examinations included the claimant's back only in February 2008 and June 2008. In February 2008, Dr. Lundsberg noted lumbar tenderness, but it

did not corkscrew down and she had negative straight leg raises.[1] In June 2008, Dr. Lundsberg noted she had lumbar tenderness, deconditioning of paraspinous muscles, lay straight down and strength in the lower extremities was normal for being deconditioned.

*Id.*

The fact that Dr. Lundsberg may have had access to MRI and CT scans of Jelitto's back ordered by Dr. Giovanniello does not change the frequency of his examinations, nor does the fact that Dr. Lundsberg and Jellito had frequent conversations about her back pain. Indeed, Jelitto's frequent mention of allegedly debilitating back pain makes it more "striking" that examinations were not performed more often. Plaintiff has not identified, and the court has not found, any evidence on the record that Dr. Lundsberg conducted any other examinations focusing on Jelitto's back.

Even if a treating physician's opinion is supported by medically acceptable clinical and laboratory techniques, it is still only given controlling weight if it is consistent with other substantial evidence in the record. The ALJ found that Dr. Lundsberg's opinion did not meet these criteria, in part because

> [i]n his February 2009 opinion, Dr. Lundsberg indicates the claimant's experience of pain and other symptoms was constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. However, during a consultative examination in October 2009, Dr. Colledge noted the claimant was able to maintain attention for 2.5 hours and meaningfully participate in the process. In addition, the claimant was able to follow and participate in her disability hearing.

*Id.* at 29. The record supports this observation. *See id.* at 742 (Dr. Colledge observing Jelitto "was able to maintain attention for the duration of the examination, which lasted approximately

---

[1] Plaintiff suggests this first test may have never occurred, Reply Brief at 4, Dkt. No. 18 (Jan. 4, 2012), but the record reflects that it did, Record at 379.

two and a half hours, and to meaningfully participate in the process); *Id.* at 48–63 (Jelitto extensively participating in the administrative hearing with no evidence of inability to concentrate on or answer questions). The court agrees with the Commissioner that this can reasonably be considered an inconsistency, even assuming Dr. Lundsberg was more familiar with Jelitto than Dr. Colledge or the ALJ.

Therefore, the ALJ did not err when she decided Dr. Lundsberg's opinion was not entitled to controlling weight. Under 20 C.F.R. § 404.1527(c)(2), an opinion must both be well-supported by medically accepted clinical and laboratory techniques and consistent with the other substantial evidence on the record. The ALJ reasonably concluded that neither of these conditions had been met.

### B.   Other Weighting Factors

When a treating physician's opinion is not entitled to controlling weight, the ALJ must evaluate the opinion to determine what weight it should be given. The factors to be considered include: supportability, consistency, specialization, length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, and amount of understanding the physician demonstrates of the SSI application evidentiary requirements. *See Langley*, 373 F.3d at 1119; 20 C.F.R. § 404.1527(c). Considering these factors, the ALJ determined that Dr. Lundsberg's opinion was to be given "little weight." Record at 30.

As observed above, it was not unreasonable for the ALJ to find that Dr. Lundsberg's opinion was based on limited medical evidence and conflicted with other substantial evidence on record. It is undisputed that Dr. Lundsberg is not an specialist in back pain. He did have a lengthy relationship with Jelitto with relatively frequent visits, but, as the ALJ observed, his

7

records do not always include complete information on Jellito's appointments and tests with other physicians. *See, e.g., id.* at 260 (observing Jelitto had appointment with neurosurgery, but failing to note that surgery was not recommended as the record reflects at 235, and stating Jelitto had an EGD done, but not noting any results). The ALJ found Dr. Lundsberg's opinion on Jellito's ability to work shifted over time, based upon differing recommendations in the February 2008 work ability report and the February 2009 medical report. *Compare id.* at 425 (noting Jelitto could sit for only thirty minutes and could not work any hours a week) *with id.* at 412 (stating Jelitto could sit up to one hour continuously and work four hours a day). The ALJ also points to several aspects of Dr. Lundsberg's reports which suggest he may not have been familiar with the requirements of the Social Security disability program, such as his proffer of an opinion that Jelitto "is not employable at all," a determination reserved to the Social Security Commissioner. *Id.*

Given this balance of factors, the court holds that the ALJ's decision to accord Dr. Lundsberg's opinion little weight was based on substantial evidence and is not therefore legally erroneous.

## II.     DR. MANWILL

Jelitto also argues that the ALJ determination was erroneous because it accorded unreasonably little weight to the opinion of Dr. Manwill, one of the two psychologists Jelitto saw after her administrative hearing. Dr. Manwill performed a Weschler Memory Skill Test and completed a work capacity evaluation, indicating Jelitto had several slight, limited, and marked limitations in various areas, as well as extreme limitations in several areas including ability to understand and carry out detailed instructions, maintain attention and concentration for extended

8

periods, maintain regular attendance, or respond to changes in the work setting. *Id.* at 656–57.

The ALJ did not include these limitations in her assessment, relying instead on the findings of Dr. Colledge, the other psychologist whom Jelitto saw after the administrative hearing. Dr. Colledge performed a Wechsler Adult Intelligence Scale, Wechsler Memory Scale, and Test of Memory and Malingering. *Id.* at 742. Dr. Colledge found that Jellito's ability to understand and carry out detailed instructions was not affected by any impairments. *Id.* at 746.

Jelitto argues that the ALJ unreasonably discounted Dr. Manwill's opinion in favor of Dr. Colledge's. This decision, however, was based upon substantial evidence. Dr. Colledge performed more tests than Dr. Manwill, and had the benefit of reviewing Dr. Manwill's findings before visiting with Jelitto herself. Dr. Manwill's report finds mental impairments that were not even alleged, such as post traumatic stress disorder. *Id.* at 657. Dr. Manwill's report was also internally contradictory as to whether Jelitto suffered from psychotic symptoms. *Id.* at 658 (noting initially Jelitto's symptoms "are consistent with a Major Depressive Disorder that is recurrent and severe *without* psychotic features" and then diagnosing Jelitto with "Major Depressive Disorder, recurrent, severe *with* psychotic features) (emphasis added). These facts reasonably impact the supportability and consistency of Dr. Manwill's opinion, and support a decision by the ALJ to accord his opinion relatively little weight.

The ALJ decision mentions Dr. Manwill's opinion fails "to address factors that might have affected the scores such as narcotics, medication side effects, an [sic] malingering." *Id.* at 33. Plaintiffs argue that such considerations were not suggested to be medically relevant by any opining physician, and suggest an impulse on the part of the ALJ to "play doctor." Opening

Brief at 17. Just a few sentences after her comment about narcotics, medication, and malingering, however, the ALJ observes that Dr. Colledge did perform a test of malingering which suggested Jelitto was not exaggerating her symptoms. Record at 33. Given this context, the court does not find that the ALJ engaged in improper speculation in weighing Dr. Manwill's opinion.

Plaintiff has not shown that the specific reasons listed by the ALJ to support her decision are not legitimate, and the court's review of the record reveals that they are properly supported. Therefore, the court will not disturb that holding on review.

## CONCLUSION

As explained above, Plaintiff's arguments do not demonstrate that the denial of her benefits was legally erroneous and unsupported by the substantial evidence. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 24th day of April, 2012.

BY THE COURT:

Samuel Alba

United States Magistrate Judge